STATE, EX REL. GEORGE E. HALL, STATE TREASURER, RELATOR, v. WILLIAM G. URE, TREASURER OF DOUGLAS COUNTY, RESPONDENT.

FILED MARCH 4, 1916. No. 19215.

1. **Mandamus: PUBLIC FUNDS: PAYMENTS BY COUNTY TREASURERS.** Under sections 6515 and 6516, Rev. St. 1913, the auditor of public accounts is the proper official to institute and direct legal proceedings in the name of the state for the failure of any county treasurer to make settlements with the auditor and pay over to the state treasury funds in his hands belonging to the state, when required by law to make such settlements and payments. But where demand has been made by the state treasurer upon a county treasurer for payment by the latter into the state treasury of all funds in his hands belonging to the state, at times other than the two dates fixed in section 6507, and the county treasurer admits that he has in his hands the amount of state funds demanded, so that nothing remains to be done by the county treasurer except to perform the mere ministerial act of paying over the sum so admitted, and he fails or refuses to perform such duty, the state treasurer may by mandamus compel performance.

2. **County Treasurers: STATE FUNDS: SETTLEMENTS: REASONABLENESS OF DEMAND.** Section 6507, Rev. St. 1913, examined, and *held*, that the times when county treasurers are required to pay over state

State, ex rel. Hall, v. Ure.

funds in their hands are the two dates therein fixed and such other times as the state treasurer shall require. *Held*, further, that it is the duty of the state treasurer, in making demand for settlement by county treasurers at times other than the two dates fixed in the statute, to fix reasonable times for compliance with such demand, and that a demand for monthly settlements is reasonable.

3. Mandamus: STATE FUNDS: RECEIPTS: DUTY OF STATE TREASURER. When a county treasurer pays into the state treasury funds belonging to the state, it is the duty of the state treasurer to issue duplicate receipts therefor, file one of such duplicates in the auditors's office, and deliver the other, countersigned by the auditor, to the county treasurer making such payment; and, for his refusal to obtain and deliver such receipt, mandamus will lie.

Original proceeding in mandamus by relator, as state treasurer, to compel respondent, as county treasurer, to pay over moneys in his hands collected for the state. *Writ allowed.*

*Willis E. Reed, Attorney General,* and *George W. Ayres,* for relator.

*Mahoney & Kennedy, George A. Magney* and *William C. Ramsey, contra.*

FAWCETT, J.

This is an original action in this court by the relator as state treasurer, for the writ of mandamus to compel respondent, county treasurer of Douglas county, to pay over to relator $170,000, which relator alleges respondent had in his hands, being moneys which had been collected by him as county treasurer prior to June 1, 1915, for the use and benefit of the state. An alternative writ was issued, returnable June 17, 1915. A hearing, quite informal in character, was had, the respondent appearing in person and by Mr. William C. Ramsey, deputy county attorney, and the relator by Mr. George W. Ayres, special assistant attorney general. At this informal hearing it was conceded by respondent that he had in his hands at the time more than the sum named by relator, but he insisted that he should not be required to pay the money over to relator for several reasons: (1) That the state treasurer was

without authority to compel a county treasurer to remit state taxes to him whenever it pleased his fancy; (2) that before a county treasurer could be required to pay money over to the state treasurer he was entitled to a statement from the auditor of public accounts, showing the amount of state taxes which the county treasurer should pay into the state treasury; (3) that as county treasurer he was entitled, when paying money over to the state treasurer, to the receipt of the state treasurer duly countersigned by the auditor of public accounts, and that the relator had uniformly refused to furnish him such a receipt; and (4) that the state treasurer was without authority to bring this action, the auditor of public accounts being the one, and the only one, duly authorized by statute to institute such proceedings. The result of the informal hearing was that the court granted a peremptory writ, ordering respondent to pay over to relator $170,000. This writ was issued June 24, 1915, and served two days later. On June 29, 1915, by agreement of parties, the peremptory writ was vacated on condition that respondent at once pay over to relator all state funds in his hands, such payment to be without prejudice to the right of respondent to answer the alternative writ and have a hearing of the case upon the merits. Respondent complied with the condition and paid over to relator $187,100. His answer was filed in due time, briefs were filed by both parties, and the case was submitted on the briefs and oral arguments at the bar.

It is pleasing to note that there is no question of shortage in the accounts of the respondent, nor any claim of incompetency. In the brief of counsel for relator it is gracefully conceded that the important office of county treasurer of Douglas county is "so efficiently presided over by the respondent himself." The question before us, therefore, is devoid of sentiment or sympathy, and calls for a plain determination of the duties and responsibilities of the two public officials involved, in their relations to and with each other.

State, ex rel. Hall, v. Ure.

The question confronting us at the threshold of the case is: Can the relator, as state treasurer, maintain this action, or should it have been brought by the auditor? Section 5546, Rev. St. 1913, declares it to be one of the duties of the auditor "to direct prosecutions in the name of the state for all official delinquencies in relation to the assessment, collection and payment of the revenue against all persons who by any means become possessed of public money or property due or belonging to the state and fail to pay over or deliver the same." Section 6515 provides: "Upon the failure of any county treasurer to make settlement with the auditor, the auditor shall sue the treasurer and his surety upon the bond of such treasurer, or sue the treasurer in such form as may be necessary, and take all such proceedings, either upon such bond or otherwise, as may be necessary to protect the interest of the state." Section 6516 provides: "Such suit shall be brought in behalf of the state in the district court of the county in which such treasurer holds office or resides, and process may be directed to any county in the state. If (In) any proceedings against any officer or person, whose duty it is to collect, receive, settle for or pay over any of the revenues of the state, whether the proceeding be by suit on the bond of such officer or person or otherwise, the court in which such proceeding is pending shall have power, in a summary way, to compel such officer or person to exhibit on oath a full and fair statement of all moneys by him collected or received, or which ought to be settled for or paid over, and to disclose all such matters and things as may be necessary to a full understanding of the case, and the court may, upon hearing, give judgment for such sum or sums of money as such officer or person is liable in law to pay."

Under these sections of the statute it is clear that the auditor is the proper official to bring an action against a county treasurer, like the one at bar, and in such action summarily compel such treasurer to exhibit on oath a full and fair statement of all moneys by him collected or received, and to disclose all such matters and things as

might be necessary to a full understanding of the case; and the court upon such hearing would have the power to give such judgment as the evidence would require. If such an action had been instituted, this court would have been relieved of much unnecessary time and labor. But, however preferable such a course might have been, was such course exclusively the one which should have been pursued? That depends upon another proposition. If the respondent, when called upon by the relator to pay over moneys in his hands, had promptly furnished the auditor full information as to the condition of his accounts by exhibiting to him his accounts and vouchers, as required by section 5547, he would have been under no obligation to turn over the money in his hands until the auditor had passed upon the statement so furnished. When the auditor had examined, adjusted and settled the account, whether by an independent investigation, or by accepting the statement of the county treasurer as correct, and fixed the amount which he should pay over to the state treasurer, nothing would remain for the county treasurer to do but to perform the mere ministerial act of transferring the state funds from his own control to that of the state treasurer; and, if he refused to perform this mere ministerial duty, we think the state treasurer could by mandamus compel performance; this upon the theory that the money had, by the forms of law, been duly found to belong to the state, and that the treasurer was entitled to have the custody and control of the same. Again, when the state treasurer makes demand upon a county treasurer to pay over state taxes collected by him, and the treasurer admits that he has in his hands, belonging to the state, moneys to the amount of the state treasurer's demand, then, so far as the custody of that particular sum of money is concerned, it is immaterial that the auditor has not made an examination, and the rule then would be the same as that above stated, viz., that the amount of the sum demanded being admitted to be state money, and in the hands of the county treasurer, that admission is equiva-

lent to an admission that the state treasurer is entitled to the custody of the money demanded. It then becomes the duty of the county treasurer to pay it over. The question as to the amount he must pay over calls for no exercise of judicial discretion or of expert ascertainment. His duty in such case, as in the other, is purely ministerial, that of delivering the sum involved to the state treasurer. That is this case. We therefore hold that the treasurer's right to maintain this action cannot be questioned by the respondent.

We come now to what we regard as the real merits of this controversy. Section 6507 provides: "The treasurers of the several counties shall pay into the state treasury all funds in their hands belonging thereto on or before the tenth day of February and the tenth day of October in each year, and at such other times as the state treasurer shall require." Section 6508 provides: "Upon ascertaining the amount due to the state from any treasurer or other person, the auditor shall give such person a statement of the amount to be paid, and upon the presentation of such statement to the state treasurer, and the payment of the sum stated to be due, the treasurer shall give duplicate receipts therefor, one of which shall be filed in the auditor's office, and entered in a book to be kept for that purpose, and the other shall be. countersigned by the auditor and delivered to the person making the payment, and no payment shall be considered as having been made until the treasurer's receipts shall be countersigned by the auditor as aforesaid."

It will be seen that section 6507 expressly provides for payments by county treasurers twice a year, and it is contended by respondent that the state treasurer has no authority to call for settlements at any other time unless there exists a necessity for the state to make such call. We do not think this contention is sound. The state is not compelled to allow large sums of money to remain idle in the various county treasuries, when if it were paid into the state treasury it could be deposited in depository

banks at 3 per cent. interest, or used to pay state warrants which draw 4 per cent. This fact alone would be sufficient justification on the part of the state treasurer to call for monthly settlements by county treasurers. We agree with counsel for respondent that the state treasurer cannot make these calls at his mere whim, or at unreasonable times; as, for instance, every week, or daily, as the brief says he might do if his right to call for monthly settlements should be sustained. No such purpose on the part of the legislature can be gleaned from the statute in question, nor would the courts ever sanction such unreasonable procedure on the part of the state treasurer. Monthly settlements are not burdensome in any line of trade or commerce, and we are unable to see why they should be considered burdensome or unreasonable as applied to the business of the state. We therefore hold that the state treasurer, under the provisions of section 6507, has the right to call upon the county treasurers for monthly payments of state moneys in their hands.

When a call is made upon a county treasurer for payment of moneys in his hands, belonging to the state, what is his duty? Section 5547 answers the question, viz.: "All county treasurers, or other persons who are by law required to make settlements or pay money into the state treasury at certain specified times, shall, on or before such date, exhibit their accounts and vouchers to the state auditor, who shall, as soon as practicable, examine, adjust and settle such accounts and report to the state treasurer the balance found due the state." It may be contended that the term, "at certain specified times," refers to the times specified in the statute; but we think this is too narrow a construction. It would have been easy for the legislature to have said that the treasurer should make settlements or pay money into the state treasury at "the times specified in the statute." It did not do that, but used the language, "at certain specified times." Those times should, therefore, be construed to be the two dates fixed in section 6507, *supra,* and "such other times as the

state treasurer shall require." Giving the statute that construction, then it was the duty of the respondent, when called upon by the relator to pay over all state moneys in his hands by a certain date, to exhibit to the auditor, before such date, his accounts and vouchers for examination. We do not mean by this that it was the duty of the respondent to transport all his books and papers from his office in Omaha to the auditor's office in Lincoln for examination; but we think it was his duty to prepare a statement of the state moneys then in his hands and present that statement, with his vouchers, to the auditor. We think it is the duty of a county treasurer, when called upon by the state treasurer to make monthly payments of state moneys in his hands, to disregard anything in the demand of the state treasurer which savors of dictation or assumption of powers which do not belong to him, and to proceed in good faith to comply with the requirements of the statute by promptly sending to the auditor a statement of the moneys in his hands which would be subject to the demand so made. He cannot fail to do that and then justify his refusal on the ground that the auditor has not performed the duty imposed on him by statute. We think a fair construction of section 5547, *supra*, imposes upon the county treasurer the duty of making the first move in the making of such settlement by exhibiting to the auditor his accounts and vouchers as therein stated. This the respondent failed to do.

Another claim by respondent is that, under the provisions of section 6508, which provides that, when payment is made by a county treasurer to the state treasurer, the latter shall give duplicate receipts therefor, one of which shall be filed in the auditor's office, and the other countersigned by the auditor and delivered to the county treasurer making the payment, he is not required to make payment until he is furnished such receipt, for the reason that the section of the statute just referred to further provides, "and no payment shall be considered as having been made until the treasurer's receipts shall be countersigned by

the auditor as aforesaid." The respondent shows, and the showing is not disputed but in fact is conceded, that prior to the commencement of this action the relator had at all times refused to give him a receipt countersigned by the auditor. Relator contends that it is the duty of a county treasurer to pay over the state moneys, obtain his duplicate receipts, and himself take them to the auditor and file one, and have the other countersigned; while the respondent contends that it is the duty of the state treasurer to file one of the duplicate receipts in the auditor's office, procure the other to be countersigned by the auditor, and deliver such countersigned receipt to the county treasurer. We think the contention of the respondent is sound on this point. He is not required to bring the money with him to the state treasurer's office and pay it over. Under the provisions of section 6507, *supra,* the sum so paid by the county treasurer to the state treasurer "shall be the identical state warrants if any received by the treasurer for payment of the taxes, or in coin or in treasury notes of the United States." In addition to this, it appears from the record before us that, when the relator made his demand upon the respondent, he advised him that he could "make such remittances by bank draft or some form of exchange which is payable at face value in Lincoln or Omaha." When, therefore, state funds are remitted to the state treasurer by a county treasurer, by either of the methods prescribed in the statute, or in the treasurer's demand, it is his duty to send to the remitting treasurer a receipt duly countersigned by the auditor. If he refuses to send such a receipt, mandamus will lie to compel him to do so. In like manner, if the auditor, in a proper case, should refuse to countersign such receipt, mandamus would lie to compel him to perform that duty. The relator now recognizes the fact that that duty rests upon him, and when respondent made the payment, hereinbefore referred to, relator sent him such a receipt, and in the brief of the attorney general, on behalf of the relator,

it is stated, in substance, that there will be no further refusal to perform that duty.

In the light of what we have said, we think the peremptory writ issued on June 24, 1915, was properly issued, and, such writ having been vacated for the purpose of the present hearing, it is ordered that it shall again issue; each party to pay one-half of the costs.

WRIT ALLOWED.

SEDGWICK, J., concurring.

Since the county treasurer admits in his return to the writ that he has the money of the state in his hands as alleged in the writ, and that a demand for the same has been made by the state treasurer, I think the money should be transferred from the county treasury to the state treasury, and that the duty to see that it is done devolves upon the state treasurer, who can maintain this action for that purpose.

I do not think that section 6507, Rev. St. 1913, contemplates that the state treasurer shall by general order require monthly settlements by county treasurers in addition to the semi-annual settlements which the section requires. This construction of the statute places a burden upon the auditor not contemplated by the statute. The section relates only to payment of state funds into the state treasury. When, as in this case, it is conceded that a county treasurer has a large amount of state funds in his hands, the state treasurer may require that it be paid into the state treasury. No formal settlement with the county treasurer is necessary in such case.

Section 6508 relates to the semiannual settlements required by the statute. When upon such settlements the auditor has determined the amount due, he gives the county treasurer a statement of the amount. The county treasurer presents this statement with the money to the state treasurer, and he "shall give duplicate receipts therefor." These duplicate receipts are not evidence protecting the county treasurer unless he files one of them with the

state auditor and procures him to countersign the receipt retained by the county treasurer. The county treasurer is the only one interested in having this receipt conclusive that payment has been made, and he cannot obtain a valid receipt unless he presents the duplicate receipts which the state treasurer is required to give, and procures the auditor to countersign his receipt. Thus it is made certain that the auditor will have official notice of the payment by the county treasurer. If the county treasurer sees that this is done, he will have a good receipt, otherwise not. If he leaves it to some other person to present to the auditor the duplicate receipts which the state treasurer gives, he assumes the risk of having no legal evidence of the payment he has made.