STATE OF NEBRASKA, PLAINTIFF, v. WILLIAM G. URE ET AL.,
DEFENDANTS.

FILED JULY 8, 1918.  No. 19972.

1. **County Treasurer:** INTEREST ON STATE FUNDS. A county treasurer is chargeable with interest on state funds if he fails "to pay into the state treasury the amount due the state on his account, for state and other taxes at the time or times required." Rev. St. 1913, sec. 6509.

2. **States:** COUNTY TREASURERS: STATEMENT OF ACCOUNTS: INTEREST. He must fully state to the auditor the condition of his account with the state upon blanks furnished him by the auditor; and, when the auditor has adjusted the account and stated the amount due the state, the account so stated is then "due the state," and he will be chargeable with interest thereon until it is paid to the state treasurer.

3. ———: ———: ———. If the auditor fails to furnish "suitable blanks for the settlements of county treasurers with the auditor," as required by section 6520, Rev. St. 1913, or if he refuses to countersign the state treasurer's receipt as required by section 6508, money in the hands of the county treasurer is not "due the state on his account" within the meaning of section 6509.

4. ———: ———: SETTLEMENT OF ACCOUNTS. It is only when money is transferred to the state treasurer voluntarily by the county treasurer, waiving the formalities that are required for his protection and the protection of the public, that "no formal settlement with the county treasurer is necessary."

Original action against county treasurer to recover interest on delayed payment of state taxes. *Objections to report of referee overruled, report approved, and judgment for defendants.*

*Willis E. Reed, Attorney General,* and *George W. Ayres,* for plaintiff.

*William Baird & Sons* and *W. C. Ramsey, contra.*

SEDGWICK, J.

In March, 1916, upon the application of the state treasurer this court allowed a writ of mandamus against the defendant herein, as treasurer of Douglas county, re-

quiring him to pay into the state treasury $170,000 of the
funds in his hands belonging to the state. *State v. Ure,*
99 Neb. 486. Afterwards the state auditor brought this
action against the defendant to recover interest on alleged
amounts due the state on his account, which he had failed
to pay when due. Honorable John M. Stewart was ap-
pointed referee to take the evidence and report his find-
ings of fact and conclusions of law. The referee, upon
the facts found by him, reported that there was nothing
due from the defendant. The case was submitted upon
the briefs and oral argument, upon exceptions to the
report of the referee. The exceptions to the report of
the referee which are principally discussed are: "(1)
The referee erred in finding as a matter of fact that the
defendant Ure did not make monthly payments of state
moneys in his hands into the state treasury because the
state auditor would not furnish him with blanks on which
to make his monthly statements of account and would not
countersign his receipts for money paid. (2) The ref-
eree erred in holding, as a conclusion of law, that interest
does not begin to run on the account of a county treasur-
er with the state until after such account has been settled
and adjusted by the state auditor." The remaining ex-
ceptions are formal, and, so far as the questions here pre-
sented are concerned, are included in the second excep-
tion above.

Section 6509, Rev. St. 1913, is: "Any treasurer failing
to pay into the state treasury the amount due the state
on his account, for state and other taxes at the time or
times required by this article, shall pay interest at the
rate of ten per cent. per annum from the time the same
became due until the same is paid; and it shall be the duty
of the auditor to charge such interest to the account of
every treasurer failing to pay at the time or times re-
quired by this article. In no case shall the auditor be
permitted to remit such interest, unless satisfactory
evidence from the county board is presented to him show-
ing, by official action taken by such board, lawful excuse

why the treasurer could not pay over in part or in whole the amount due on such treasurer's account with the state.''

Under this section the question here is whether the county treasurer has failed ''to pay into the state treasury the amount due the state on his account, for state and other taxes at the time or times required.'' The brief of the relator is principally devoted to the proposition that this question was adjudicated in the former case above referred to. It appears from the opinon in that case that the state treasurer, relying upon section 6507, Rev. St. 1913, required the county treasurers of the several counties of the state to make monthly remittances to the state treasurer of all funds in their hands belonging to the state. Thereupon many questions arose as to the powers and duties of the state and county treasurers, respectively, the state auditor, and possibly other public officers. In that case, we said:

''It is clear that the auditor is the proper official to bring an action against a county treasurer, like the one at bar, and in such action summarily compel such treasurer to exhibit on oath a full and fair statement of all moneys by him collected or received, and to disclose all such matters and things as might be necessary to a full understanding of the case; and the court upon such hearing would have the power to give such judgment as the evidence would require. If such an action had been instituted, this court would have been relieved of much unnecessary time and labor. But, however preferable such a course might have been, was such course exclusively the one which should have been pursued? * * * If the respondent, when called upon by the relator to pay over moneys in his hands, had promptly furnished the auditor full information as to the condition of his accounts by exhibiting to him his accounts and vouchers, as required by section 5547, he would have been under no obligation to turn over the money in his hands until the auditor had passed upon the statement so furnished.

\* \* \*. When the state treasurer makes demand upon a county treasurer to pay over state taxes collected by him, and the treasurer admits that he has in his hands, belonging to the state, moneys to the amount of the state treasurer's demand, then, so far as the custody of that particular sum of money is concerned, it is immaterial that the auditor has not made an examination, and \* \* \* the amount of the sum demanded being admitted to be state money, and in the hands of the county treasurer, that admission is equivalent to an admission that the state treasurer is entitled to the custody of the money demanded.''

This was the basis of our former decision. Section 5547, Rev. St. 1913, was quoted in the opinion. It is as follows:

''All county treasurers, or other persons who are by law required to make settlements or pay money into the state treasury at certain specified times, shall, on or before such date, exhibit their accounts and vouchers to the state auditor, who shall, as soon as practicable, examine, adjust and settle such accounts and report to the state treasurer the balance found due the state; and if any county treasurer or other person so required by law to pay funds into the state treasury shall fail to make the settlement herein required at the proper time, or to pay the amount so found due to the state treasurer and produce his receipt to the auditor within ten days after the settlement above required, the delinquent shall forfeit to the state all collection fees and mileage allowed by law, and also a penalty of ten per cent. on the amount wrongfully withheld and interest on the whole at the rate of fifteen per cent. per annum from the time the same should have been paid until actual payment, and the auditor shall charge such delinquent accordingly; and the whole amount of principal and forfeiture may be recovered by action on the official bond of the delinquent, or otherwise, according to law.''

And it was said: "It was the duty of the respondent, when called upon by the relator to pay over all state moneys in his hands by a certain date, to exhibit to the auditor, before such date, his accounts and vouchers for examination. * * * We think it was his duty to prepare a statement of the state moneys then in his hands and present that statement, with his vouchers, to the auditor." It was also said that it is the duty of the county treasurer to make "the first move in the making of such settlement by exhibiting to the auditor his accounts and vouchers;" but in that suggestion it was assumed that the auditor had furnished the county treasurers with the necessary blanks and instructions.

The auditor is the state accountant; he represents the state in settlements between the state treasurer and the various county treasurers. "The auditor is declared to be the general accountant of the state, and the keeper of all public account books, accounts, vouchers, documents and all papers relating to the accounts and contracts of the state, and its revenue, debt and fiscal affairs, not required by law to be placed in some other office or kept by some other officer or person." Rev. St. 1913, sec. 5544. Section 5648 provides that the auditor of public accounts shall supervise the establishment of a "uniform system of keeping all accounts pertaining to the office of county treasurer." Section 6520 provides: "It shall be the duty of the auditor to furnish suitable blanks for the settlements of county treasurers with the auditor, and all other books and blanks required by this chapter not otherwise herein provided for." From this section it appears that the settlements of the county treasurers are not to be made with the state treasurer, but with the auditor. This is specifically provided by section 5547, above quoted. Section 6508 provides that, when the auditor shall ascertain the amount that is due the state from the county treasurers, he shall give the treasurer a "statement of the amount to be paid." The county treasurer then presents this statement to the state treasurer and pays over

the amount indicated in the statement. The state treasurer executes duplicate receipts and gives one of these to the auditor, who finds that it corresponds with his statement to the state treasurer and countersigns the receipt to be given to "the person making the payment." It appears from the record now before us that in some cases under the monthly calls of the state treasurer the respondent, in one case at least, paid to the state treasurer more than the amount that was due from the county treasurer. The difference was carried as a credit to the county treasurer and deducted from his subsequent remittance. It is only upon the theory that these payments are voluntarily made by the county treasurer, waiving the formalities that are required for his protection and for the protection of the public, and that he pays over the money upon the understanding that if it should be more or less than the actual balance as adjusted by the auditor the discrepancy will be corrected in the auditor's adjustments afterwards, that it can be said that "no formal settlement with the county treasurer is necessary in such case." *State v. Ure, supra.* If the payment by the county treasurer is compulsory under the call of the state treasurer, the formal settlement and adjustment of the account by the auditor is necessary, as is plainly stated in our former opinion. The evidence in this case will justify the finding of the referee that for part of the time involved the state officers refused to furnish to the respondent a receipt countersigned by the auditor for money paid into the state treasury pursuant to these monthly calls, and that under the practice of many years there had never been "established a uniform system of keeping all accounts pertaining to the office of county treasurer" under the supervision of the auditor, and the auditor did not furnish to the respondent "suitable blanks for the settlements of county treasurers with the auditor" pursuant to these monthly calls, but, on the other hand, the auditor and state treasurer both assumed that such settlements were unnecessary. This evidence supports the

referee's finding of fact which is complained of, and his conclusion of law that under such circumstances the treasurer would not be liable for interest necessarily follows.

It was said in our former opinion: "There is no question of shortage in the accounts of the respondent, nor any claim of incompetency. In the brief of council for relator it is gracefully conceded that the important office of county treasurer of Douglas county is 'so efficiently presided over by the respondent himself.' " It would seem that at the time of the former trial the state officers were themselves to some extent misled by the long-established practice of their predecessors in office, and that all parties to this controversy have endeavored to perform the duties of their respective offices as the law required. There is no doubt of their good faith in the matter, and, that being so, under such circumstances as these, the respondent ought not to be found in default in his management of the public funds.

The objections to the referee's report are overruled, and the report approved, and judgment entered accordingly.

OBJECTIONS OVERRULED, AND JUDGMENT FOR RESPONDENTS.